IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAX INTERNATIONAL CONVERTERS, INC. and MAXSTICK PRODUCTS LTD., <br><br> Plaintiffs, <br><br> v. <br><br> ICONEX LLC, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) <br><br> C.A. No. 18-1412 (MN) |

## MEMORANDUM ORDER

At Wilmington this 24th day of September 2019:

IT IS HEREBY ORDERED that the claim terms of U.S. Patent Nos. 8,445,104 (the "'104 Patent"), 9,208,699 (the "'699 Patent"), and 9,646,517 (the "'517 Patent") with agreed-upon constructions are construed as follows (*see* D.I. 59 at 6):

1. "cut by the auto-cutting mechanism to a variable length determined by the amount of printing on the web" means "the length of the label cut by the auto-cutting mechanism is not determined by black sensing marks, gaps in the adhesive, pre-determined perforations or cuts but is determined by the axial length of-the printing on the label" ('104 Patent, claim 1; '699 Patent, claim 6; '517 Patent, claim 15)

2. "custom cut from the roll of the media by a thermal printer at custom lengths" means "the length of the label cut by the auto-cutting mechanism is not determined by black sensing marks, gaps in the adhesive, pre-determined perforations or cuts but can be determined by, among other things, the axial length of the printing on the label" ('699 Patent, claim 5)

3. "cut by a thermal printer at varying custom lengths" means "the length of the label cut by the auto-cutting mechanism is not determined by black sensing marks, gaps in the adhesive, pre-determined perforations or cuts but can be determined principally by the axial length of the printing on the label" ('517 Patent, claim 9)

Further, as announced at the hearing on September 13, 2019, IT IS HEREBY ORDERED that the disputed claim terms of the '104, '699, and '517 Patents are construed as follows:

1. "substantially continuous" / "substantially interrupted" mean "the adhesive coverage on the paper or substrate is such that the cutting mechanism of the point-of-sale printer contacts adhesive when a separate piece or label is cut from the roll" ('699 Patent, claim 6; '517 Patent, claims 1, 9, 10, 15 & 16)

2. "at least one adhesive strip . . . extending in a substantially uninterrupted manner along a running axis of said web" means "an adhesive strip that extends such that the cutting mechanism of the point-of-sale printer contacts adhesive when a separate piece or label is cut from the roll" ('104 Patent, claim 1)

3. "said adhesive will extend in a continuous manner along the length" means "the adhesive areas extend along the entire length of the label in a continuous and uninterrupted manner" ('104 Patent, claim 1)

4. "extends over substantially the entire bottom surface" is given its plain and ordinary meaning of "largely but not necessarily wholly over the bottom surface" ('699 Patent, claim 8)

5. "prevent fouling" means "reduce or eliminate adhesive buildup within the printer, which can adversely affect the performance of the printer ('104 Patent, claims 1 & 4; '699 Patent, claims 6, 8 & 9; '517 Patent, claims 10 & 15)

6. "an adhesive layer" / "layer of pressure sensitive adhesive material" mean "an adhesive coating" ('517 Patent, claims 1, 2, 9 & 16)

7. "base coat" / "barrier coat" mean "a coating that prevents the adhesive applied to the substrate from moving into or contacting the substrate, particularly the thermal image coating, or secures the adhesive to the label" ('104 Patent, claims 1 & 4; '699 Patent, claims 6 & 9; '517 Patent, claims 1, 10, 15 & 16)

8. "variably patterned" / "repeating patterns" / "applying an adhesive layer in a pattern" / "at least one adhesive pattern" mean "regular arrangement of adhesive in lines" ('699 Patent, claims 6 & 8; '517 Patent, claims 2, 10 & 15)

9. "the adhesive pattern . . . will extend along the length of the thermally printed paper" is given its plain and ordinary meaning, with the term

"pattern" given the construction of "regular arrangement of adhesive in lines" as set forth above ('699 Patent, claim 6; '517 Patent, claim 15)

The parties briefed the issues (*see* D.I. 59) and submitted an appendix containing both intrinsic and extrinsic evidence (*see* D.I. 58), and Plaintiffs MAX International Converters, Inc. and MAXStick Products Ltd. (collectively, "Plaintiffs" or "MAX") also provided a tutorial describing the relevant technology (*see* D.I. 57).[1] The Court carefully reviewed all submissions in connection with the parties' contentions regarding the disputed claim terms, heard oral argument (D.I. 64) and applied the following legal standards in reaching its decision:

## I.     LEGAL STANDARD

"[T]he ultimate question of the proper construction of the patent [is] a question of law," although subsidiary fact-finding is sometimes necessary. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837-38 (2015). "[T]he words of a claim are generally given their ordinary and customary meaning [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (internal citations and quotation marks omitted). Although "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the claim also must be considered. *Id.* at 1314. "[T]he ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted).

The patent specification "is always highly relevant to the claim construction analysis . . . [as] it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic,*

---

[1]     Defendant Iconex LLC ("Defendant" or "Iconex") did not submit a tutorial.

*Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  It is also possible that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess.  In such cases, the inventor's lexicography governs."  *Phillips*, 415 F.3d at 1316.  "Even when the specification describes only a single embodiment, [however,] the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction."  *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (internal quotation marks omitted) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence."  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).  The prosecution history, which is "intrinsic evidence, . . . consists of the complete record of the proceedings before the PTO [Patent and Trademark Office] and includes the prior art cited during the examination of the patent."  *Phillips*, 415 F.3d at 1317.  "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be."  *Id.*

In some cases, courts "will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period."  *Teva*, 135 S. Ct. at 841.  Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."  *Markman*, 52 F.3d at 980.  Expert testimony can be useful "to ensure that the court's understanding of the technical

aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Phillips*, 415 F.3d at 1318. Nonetheless, courts must not lose sight of the fact that "expert reports and testimony [are] generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Id.* Overall, although extrinsic evidence "may be useful to the court," it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19. Where the intrinsic record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999) (citing *Vitronics*, 90 F.3d at 1583).

## II.    THE COURT'S RULING

The Court's rulings regarding the disputed claim terms of the '104, '699, and '517 Patents were announced from the bench at the conclusion of the hearing as follows:

> . . . I appreciate the arguments today. They were helpful. At issue are three patents, United States Patent Nos. 8,445,104, 9,208,699, and 9,646,517, the patents in suit, each titled "Thermally [Printable] Adhesive Application."
>
> There are nine terms, or groups of terms in dispute[,] and I am prepared to rule on each of those disputes. I will not be issuing a written opinion, but I will issue an order stating my ruling. I want to emphasize before I announce my decision that while I'm not issuing a written opinion, we have followed a full and thorough process before making the decisions I'm about to state.
>
> The patents in suit share a common specification and I have reviewed that specification and the claims at issue. I have also reviewed the portions of the prosecution history submitted as well as the tutorial submitted by Plaintiffs. There was full briefing on each of the disputed terms. There was an extensive appendix that included the declarations of one of the inventors and of an expert retained by Defendant. There has also been argument here today and all of that has been carefully considered.

Now, as to my ruling, as an initial manner, I'm not going to read into the record my understanding of the claim construction law generally. I have a legal standards section that I've included in my earlier opinions, including my recent order in *OmegaFlex v. Ward Manufacturing*, [C.A.] No. 18-1004. I incorporate that law and adopt it into my ruling today and will also set it out in the order that I issue.

Additionally, with respect to . . . the person of ordinary skill in the art, Plaintiff[s], in the declaration of one of the inventors, William Krahl, offer Krahl's opinion "that a person of ordinary skill would have had an associate's degree in a technical field or similar training and another least two years of industry experience."

Defendant, in the declaration of its expert, Charles Curley, offered his opinion that a person of ordinary skill in the art would have technical experience in the design, manufacture or sale of label printers, which would include both industrial label printers and tabletop point-of-sale printers, and that such a person could also include those with technical experience with the design, manufacture, or sale of label printer consumables, paper sheets, paper rolls, fanfold stacks, toners, ribbons or ink. The parties here agree, however, that the differences in proposed [definitions] do not impact the issues being argued here today.

The specifications of the three patents are the same. For ease of reference, when I cite to a specification I will cite to the specification of the '104 patent unless I specify otherwise.

First, as to the terms "substantially continuous" and "substantially uninterrupted" in claim 6 of the '699 patent, [and] claims 1, 9, 10, 15 and 16 of the '517 patent. The parties agree that these two "substantially" terms should be addressed together. Plaintiffs propose that the terms mean "the adhesive coverage on the paper or substrate is such that the cutting mechanism of the point-of-sale printer contacts adhesive substantially each time a separate piece or label is cut from the roll." Defendant proposes no construction and simply argues that the term lacks written description.

I construe the term to mean "the adhesive coverage on the paper or substrate is such that the cutting mechanism of the point-of-sale printer contacts adhesive when a separate piece or label is cut from the roll."

This construction is consistent with the specification which, in column 2, lines 6 through 18 of the '699 patent, describe the invention as "a repositionable label roll" that includes an "adhesive strip extending in a substantially uninterrupted manner along a running axis of the web" and explains that "the adhesive will extend in a continuous manner along the length of the thermally printed paper." Figures 3 and 4 also depict the invention as having adhesive at all points along the length of the paper, where it will be encountered at each cut by the cutting mechanism.

As Plaintiffs note in the joint brief, the description of Figure 4 in column 3, lines 43 to 47 of the '699 patent states that "the adhesive coating 26 is applied to the underside of the individual sheets 24 and is disposed in an alternating relation." As depicted though, the adhesive alternates from one side to the other, but there is adhesive along the length of the paper and it appears that virtually every lateral cut will intersect the adhesive coating.

The prosecution history of the '699 patent also supports the construction. In the August 26, 2015 amendment, claim 1 of the '699 patent was amended to include language that "the patterned adhesive layer is substantially continuous along the longitudinal axis of the substrate such that each lateral cut of the substrate interacts with the adhesive layer."

On pages 7 and 8 of the amendment, applicants asserted that the amendment distinguished their invention over the Blank '264 patent, prior art that had "a series of adhesive patches running along the web with differently sized adhesive-free zones therebetween in register with index marks."

Applicants explained that those prior art configurations "ensured that the cutter and the printer does not cut through the areas where either a patch of adhesive or a pattern of adhesive is positioned on the substrate." And they noted that in contrast to the prior art with adhesive-free cutting zones, claim 1 as amended requires that the patterned adhesive layer is substantially continuous along the longitudinal axis of the substrate, such that each lateral cut of the substrate interacts with the adhesive layer, thereby avoiding adhesive-free zones. I understand that claim 1 has now been disclaimed, but the prosecution history and statements made still seem to be relevant.

Defendant agrees that the use of "substantially" is not necessarily fatal to the validity of the claims and has been interpreted to have its plain and ordinary meaning of "largely but not wholly

that which is specified." It argues, however, that here "the specification does not provide any parameters for determining what would constitute substantially continuous or substantially uninterrupted within the scope of what [the] applicant[s] described in their specification, as every single embodiment in the asserted patents discloses at least one fully continuous strip of adhesive.[] Some of that sounds like a challenge . . . to definiteness, but definiteness has not been argued before the Court in this proceeding.

As to the written description argument made, I find that Defendant has failed to show by clear and convincing evidence that the term "lacks written description." To satisfy the written description requirement, a patent specification must describe the claimed invention in sufficient detail that one skilled in the art can reasonably conclude that the inventor had possession of the claimed invention as the Federal Circuit has stated in *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1319 (Fed. Cir. 2003).

The Federal Circuit has also made clear that the disclosure does not have to provide word-for-word support in order to satisfy the written description requirement. For example, in *the Purdue Pharma LP v. Faulding Inc.*, 230 F.3d, 1320, 1323 (Fed. Cir. 2000) and *Power Oasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008).

Here, the terms "substantially continuous" and "substantially interrupted" are described in the specification. The specification at column 1, line 66 through column 2, line 5 uses the term "substantially uninterrupted" in the summary of the invention, stating: "The invention is a repositionable label roll for use in a thermal printer comprising a web of thermal paper having a barrier coat provided on the bottom surface, at least one adhesive strip provided on the barrier coat, the adhesive strip extending in a substantially uninterrupted manner along the running axis of the web." And as I have already determined, the specification and drawings include embodiments, such as Figures 3 and 4, having different arrangements of adhesive, all of which depict coverage at all positions along the longitudinal axis of the labeled substrate.

The second disputed term is "at least one adhesive strip . . . extending in a substantially uninterrupted manner along a running axis of said web" as found in claim 1 of the '104 patent. Plaintiffs propose the construction "one or more areas of adhesive applies to the back surface of the paper/substrate that extends in a manner such that substantially all lateral cuts along an axis of the web intersect the adhesive." Defendant breaks the construction into two parts –

"at least one adhesive strip," which means "at least one continuous adhesive strip," and "extending in a substantially uninterrupted manner along the running axis of said web," which it contends lacks written description.

The dispute regarding the substantially uninterrupted part of the term is essentially identical to what we have already discussed with respect to the first term and I adopt the reasoning for this dispute.

As for the construction of the "at least one adhesive strip" language, I agree with Plaintiff[s], that that should be given its plain and ordinary meaning. Defendant does not really dispute that and proposes the words continuous and strip in its construction.

Defendant's inclusion of the word "continuous" into the "adhesive strip" improperly reads limitations from the embodiments from the specification into the term contrary to the Federal Circuit's caution against doing so in *CCS Fitness v. Brunswick*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) and *Superguide Corp. v. DirecTV TV Enterprises, Inc.*, 358 F.3d, 870, 875 (Fed. Cir. 2004).

. . . I will construe this term to mean "an adhesive strip that extends such that the cutting mechanism of the point-of-sale printer contacts adhesive when a separate piece or label is cut from the roll."

The third disputed term is "said adhesive will extend in a continuous manner along the length" in claim 1 of the '104 patent.

Plaintiffs propose the term be construed as "the adhesive area on the back of the substrate run along the substantial length of the label." Defendant proposes it means "the at least one continuous adhesive strip extends along the longitudinal axis of the web without gaps and extends in a continuous and uninterrupted manner along the entire length of the printed label." I will construe the term to mean "the adhesive areas extend along the entire length of the label in a continuous and uninterrupted manner."

This construction is consistent with the plain meaning of the words of the claim. The claim states that it extends along the length of the label in a continuous manner. It does not say a substantially continuous, as used in other claims or even substantially uninterrupted as used in other parts of the claim. The applicant knew how to say "substantially" when it wanted to – it did not do so here.

Additionally, the claim states that it must extend along the length of the label. Again, it does not say substantial length. It says the length. That [it] refers to the entire length is supported by the specification at column 5, lines 65 to 67, which notes that in the label of the "present invention," the continuous adhesive is "along the entire length of the printed label."

The fourth term is "extends over substantially the entire bottom surface" in claim 9 of the '699 patent. Plaintiffs argue that the term should have its plain meaning, a meaning that is unstated. Defendant argues that the term lacks written description.

I construe "extends over substantially the entire bottom of the surface" to have its plain meaning – that is, "largely but not necessarily wholly over the bottom surface." This construction is consistent with the plain and ordinary meaning of the words themselves.

It is also supported by the specification. Figure 5 [and] column 3, lines 57 to 59 of the '699 patent describe "a continuous adhesive coating 36" that is provided to "substantially the entire underside surface 34." As Plaintiffs point out, this embodiment, as shown in Figure 5, has uncoated areas along the edges which support that the adhesive is only on "substantially" the entire surface.

As to Defendant's argument that the term lacks written description and renders the claim invalid, I find that Defendant has failed to meet its burden to show that by clear and convincing evidence. As noted above, to satisfy the written description requirement, the patent specification must describe the claimed invention in sufficient detail that one skilled in the art can reasonably conclude that the inventor had possession of the claimed invention. Here, as I have already determined, the specification, including Figure 5, describes the adhesive over substantially the entire bottom surface.

The fifth term, "prevent fouling," is found in claim 1 of the '104 patent, claim 6 of the '699 patent and claims 10 and 15 of the '517 patent. For this term, Plaintiffs propose the construction "reduce or eliminate adhesive build up within the printer which can adversely affect the performance of the printer." Defendant again asserts that it lacks written description.

The words "prevent fouling" are not used in the specification. But there does not seem to be any dispute that the "fouling" reference is adhesive accumulating on the moving part of

the printer. In the background of the invention, column 1, lines 59 to 62, it states that a disadvantage of prior art label rolls with the continuous strip of adhesive is that "adhesive tends to accumulate on the moving parts of the printer and otherwise cause a feed jam."

The specification at column 5, lines 56 to 60, also state that the patented invention solves that problem because its use "does not result in adhesive buildup on the moving parts of the thermal printer which . . . can adversely affect the performance of the printer and the cutter bar."

The crux of the issue raised in the claim construction dispute is thus not what the fouling is, but rather [if] there is adequate written description in the claims for how the base coat accomplishes the prevention of fouling.

Here, I will construe the language to mean, "reduce or eliminate adhesive buildup within the printer, which can adversely affect the performance of the printer" based on the descriptions I've noted in the specification and the language of the claims.

Based on the record before me, I cannot conclude that Defendant has met its burden of showing that the claim is invalid for lack of written description regarding the role of the base coat in preventing fouling. But, to the extent appropriate, Defendant may raise this issue later or at trial after full fact and expert discovery.

Sixth, we have "an adhesive layer" and "layer of pressure sensitive adhesive material," terms that are found in claims 1, 2, 9, 16 of the '517 patent. Here, the parties agree both of these phrases have the same meaning. Plaintiffs propose that the term have its plain meaning, "an adhesive coating." Defendant argues that it should mean "one or more continuous strips of adhesive coating extending in an uninterrupted manner along the longitudinal axis of the web."

Given that the Defendant uses the term "adhesive coating" in its proposal, it seems that the dispute here is largely the same as the ones discussed in connection with the second term – whether I should read the concept of it being "continuous" into the claim and whether I should read "strip" into it. For the same reasons I did not read "continuous" into the second term, I will not do so here. I will also not read "strip" into the claim. When patentees meant strip, they said "strip" – as they did in claim 13 and other claims. But in this term as used, they did not say "strip."

I will construe the terms "adhesive layer" and "layer of pressure sensitive material" as an "adhesive coating." This construction is supported by the specification which uses the terms "layer" and "coating" interchangeably. For example, in column 4, lines 19 through 22, it states that stock thermal papers are within the scope of the present invention so long as they are adapted to receive the additional coatings and layers.

Also, at column 6, lines 1 through 3, in discussing Figure 10, it states that Figure 10 "illustrates a printed label 2 shown in Figure 7 where the thermoreactive coating or layer 44 has been heat activated." And in Figure 9, the specification depicts a label with different layers, including one numbered 22, which is called the "adhesive coating" in column 3, line 33, and column 4, line 63.

. . . As I found previously, Defendant's inclusion of the word "continuous" improperly reads limitations from embodiments in the specification into the term contrary to the Federal Circuit's caution against doing so. And it is inconsistent with the specification, which refers to adhesive that may be "substantially uninterrupted."

The seventh term, "base coat" or "barrier coat," is found in claims 1 and 4 of the '104 patent, claim 6 and 9 of the '699 patent, and claims 1, 10, 15 and 16 of the '517 patent.

Plaintiffs construe the term to mean "a coating that prevents the adhesive applied to the substrate from moving into or contacting the substrate, particularly the thermal image coating and secures the adhesive to the label." Defendant proposes "a coating that prevents the adhesive applied to the substrate from moving into or contacting the substrate, particularly the thermal image coating, and secures the adhesive to the label so that it cannot be dislodged from the surface of the label during enrolling of the web."

For this term, the parties agree to the construction right up to the last part of Defendant's construction where it says, "so that it cannot be dislodged from the surface of the label during unrolling of the web."

I will adopt that agreed-upon language with one edit. The edit I make is to change the word "and" to "or" such that the construction is: "a coating that prevents the adhesive applied to the substrate from moving into or contacting the substrate, particularly the thermal image coating, or secures the adhesive to the label." I make that edit because absent it, at least claim 9 of the '699 patent would be entirely redundant.

Defendant's proposed additional language comes from the specification in column 4 discussing the embodiment of Figure 9. As I have previously, I will refrain from reading embodiments into the claim. Doing so here would be particularly inappropriate because reading in that limitation would be inconsistent with the express language of certain claims that require the base coat to secure the adhesive to prevent fouling – not as Defendant asserts so that "the adhesive cannot be dislodged during unrolling of the web."

The eighth term [is] "variably patterned," "repeating patterns" and "applying an adhesive layer in a pattern" as used in claim 6 in the '699 patent and claims 2, 10 and 15 of the '517 patent.

It is really the "patterned" aspect of the term that seems to be in dispute. Plaintiffs propose the terms be construed to mean "regular arrangement of adhesive in lines or shapes," though as I understand it, Plaintiffs agree[d] [during the argument] to drop "shapes" from their construction so that it reads "regular arrangement of adhesive in lines." Defendant asserts that the term lacks adequate written description and proposes no construction.

Although Plaintiffs propose that the "variably patterned" and "repeating patterns" be given different constructions, I will construe all of the "pattern" terms to mean "regular arrangement of adhesive in lines." The parties seem to agree that if the specification discloses patterns, they are disclosed as depicted in Figures 3 and 5. In reviewing these figures as well as Figures 4 and 6, this construction is consistent with how "patterns" are displayed in the specification.

Figure 3 shows a roll of thermally printed adhesive paper with two parallel strips of adhesive coating that extend in an uninterrupted line along the longitudinal axis of the web. Figure 4 shows another pattern – this time on a fanfold of adhesive labels with lines on alternating sides. Here, the specification at column 3, lines 36 to 40, describes the pattern depicted on Figure 4 as follows: "an adhesive coating 26 applied to the underside of the individual sheets 24 and disposed and disposed in an alternation relation." Figures 5 and 6 both show embodiments where an adhesive coating is provided to substantially the entire bottom or underside surface in one long line. In all of these figures, although the placement of the adhesive differs, there is adhesive in a line. Thus, I will construe the "pattern" terms to mean "regular arrangement of adhesive in lines."

As for Defendant's written description arguments, I find again that Defendant has failed to show by clear and convincing evidence that the term "lacks sufficient written description." Here,

the "pattern" terms, as I have construed them, are described in the specification. Figures 3, 4, 5 and 6 and the descriptions of those figures provide support for the terms. As I have already explained, these figures show different ways that adhesive may be applied to the bottom surface or substrate of the thermal paper. In all of these depictions, there are areas with adhesive in lines.

The ninth and final term "the adhesive pattern will extend along the length of the thermally printed paper" appears in claim 6 of the '699 patent and claim 15 of the '517 patent. Plaintiffs propose the construction, "the adhesive pattern extends along the length of the thermally printed paper to form a repositionable label," which essentially parrots the language of the claim. Defendant again argues that the term lacks sufficient description.

For this term, I will give it its plain and ordinary meaning, which includes the construction I just adopted for the "pattern" terms – "regular arrangement of adhesive in lines." The remainder of the term, however, will be given its plain and ordinary meaning as none of these words seems to be used in a way that contradicts that plain meaning, nor does either side assert that they are being used in a way that contradicts that meaning. In fact, Plaintiffs' proposed construction, as I said before, is simply the words of the claim itself with the addition of the rest of the limitation as recited in that claim.

Instead, the parties' dispute is not focused on the meaning of the term itself but rather whether the term has sufficient written description. Defendant raises its previous argument, that is, that the term "pattern" lacks sufficient written description. Defendant also notes that the claims that contain this term contain antecedents that require the pattern to be substantially uninterrupted, a term Defendant also contends lacks written description.

I have already stated where I think the support for those terms comes from in addressing earlier terms, and I adopt that here and find that Defendant has not met its burden to show invalidity by clear and convincing evidence for lack of written description.

The Honorable Maryellen Noreika
United States District Judge